824 F.2d 978
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Isadore and Miriam KLEIN, Appellants,
v.
The UNITED STATES, Appellee.
 Appeal No. 87-1025.
 United States Court of Appeals, Federal Circuit.
 May 1, 1987.
 
 Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge, and NIES, Circuit Judge.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the General Services Administration Board of Contract Appeals (Board), granting only part of the appellants' claim for damages they incurred in connection with a lease of their property to the government, is affirmed.
 
 OPINION
 
 2
 * In September 1969, the appellants leased to the government a building they owned in Pittsburgh, Pennsylvania. The lease was for five years, and it was extended for an additional three years, which expired on September 30, 1977. Under the lease, the government could remain in possession after September 30, 1977, on a day-to-day basis for an additional ninety days, i.e., until December 29, 1977.
 
 
 3
 The government occupied the building until November 14, 1980, and paid the rent (at the rate the lease specified) through November. The appellants accepted that rent under protest. They asserted that they were entitled to a higher rent. The government responded that it could not pay more rent because of the limitation in the Economy Act of 1932, 40 U.S.C. Sec. 278a (1982), which barred the government from leasing a building at a rent more than fifteen percent above the fair market value.
 
 
 4
 When the government vacated the building on November 14, 1980, it did not notify the appellants that it was doing so. In response to the appellants' inquiry on January 15, 1981 about the January rent, the government on February 5, 1981 informed them that it had left the building in November 1980. On January 20, 1981, the appellants received by mail the keys to the building. The Board found:
 
 
 5
 When appellants entered the building on January 29, 1981, accompanied by their real estate agent, they found lights burning, water running across the floors from broken water pipes, and extensive damage to the walls, ceilings, floors, and equipment. The Government had turned off the heat on December 17, 1980, and the pipes had frozen and burst.
 
 
 6
 The appellants filed with the General Services Administration claims for "additional rent for the hold-over period and money damages to repair the building, asserting lack of notice that the Government was going to vacate." The contracting officer denied both claims, and the appellants appealed to the Board.
 
 
 7
 The Board held that the government's reliance on the Economy Act as barring it from paying any higher rent was improper, and that "when the Government improperly took refuge behind the Economy Act it ceased to negotiate and was thereafter a tenant at sufferance." It ruled that "damages in such a case consist of the fair rental value of the premises together with such other damages as the lessor might sustain by reason of the Government's continued occupancy of the premises, insofar as those damages were foreseeable." The Board concluded that the appellants were entitled to "a fair rental for the years that the Government occupied the property without a lease," which it determined to be $7.01 per square foot for 1979, 1980, and the first two months of 1981. (The rent in the original lease was $4.00 per square foot.)
 
 
 8
 The Board held that the government's month-to-month tenancy was not terminated until the appellant received the government's notice of surrender of the premises on January 20, 1981, which effected the termination of the tenancy on February 28, 1981. The Board stated that
 
 
 9
 the holdover tenant is liable for those damages which are foreseeable as a result of the act of holding over. When the Government left the premises in November 1980 without notifying the Kleins, and caused the heat (but not the water) to be turned off on December 17, 1980, it was eminently foreseeable in Pittsburgh, Pennsylvania, that the pipes would freeze in very short order. It is also foreseeable that, having frozen, they would thereafter thaw, with resulting water damage to whatever was within reach. Any damage attributable to the Government's failure to give notice must be borne by the Government.
 
 
 10
 The Board stated that "the damage to the Kleins' premises caused by the unrestricted flow of water from the burst water pipes was extensive," "but because the record did not put a money figure on the damage," the Board limited its opinion "to determination of entitlement." It stated that "[i]f the parties cannot arrive at a satisfactory damage figure, this appeal may be reinstated to resolve that issue."
 
 
 11
 The parties were unable to agree on the amount of damages. The appellants sought $94,700, and the government admitted liability of only $32,442.
 
 
 12
 In its second opinion, the Board found, as the appellants had stated in their reply brief, that "the broken water pipes were not the sole cause of damage to the property. The roof of the building was damaged in April 1980 and not repaired, so water penetrated the interior of the building and caused damage."
 
 
 13
 According to the Board, the appellants' figure of $94,700 was based upon a bid they had obtained to repair the building. The government's figure was based upon a "specific" estimate of damages that "distinguishes between damages attributable to the broken water pipes and those attributable to the leaky roof, and it itemizes the various cost elements. Appellants do not contend that any line item cost for either material or labor in respondent's estimate is under-priced or inadequate."
 
 
 14
 Noting that the appellants have the burden "to establish both causation and amount," the Board stated that "[a]lthough appellants have made an inadequate showing to justify their damage figures, the Board recognizes that appellants' property suffered damage because of the broken water pipes. Thus, in the absence of any more specific or detailed evidence, the Board adopts respondent's estimates, with certain modifications delineated below, as the measure of damages." As a result of those modifications, the Board awarded the appellants $34,384.75.
 
 
 15
 The Board rejected the appellants' claim for "lost rent" for the period after March 1981, when the building was unusable because of the water damage. It pointed out that the appellants had been "awarded additional rent" for the months of January, February, and March 1981, and "conclude[d] that any further rental losses sustained cannot be attributed to acts of the Government." The Board ruled that "[w]hat survive[d]" of the lost rent claim "sounds in tort, an area of the law over which this Board lacks jurisdiction. 41 U.S.C. Secs. 602, 607(d) (1982). Therefore, this aspect of appellants' claim is dismissed for lack of jurisdiction."
 
 II
 
 16
 A. The appellants first contend that in the damages phase of the case the government improperly separated the water damage into the portions resulting from the burst pipes and the leaky roof. According to the appellants, in its first decision the Board held that the government was liable for all water damage the appellants suffered. The appellants assert that in these circumstances the government's attempt to avoid liability for the portion of the water damages resulting from the damaged roof was barred by res judicata and constituted a counterclaim that the government should have pleaded and litigated during the first Board proceeding dealing with entitlement. They argue that the Board improperly considered this issue in the damages phase of the case.
 
 
 17
 The arguments rest upon a misapprehension of the Board's first decision. The Board did not there hold that the government was liable for all the water damage to the building. It held only that the bursting of the pipes and the resulting water damage were foreseeable consequences when, in November 1980 and without notifying the appellants, the government vacated the building and turned off the heat. The Board stated that because the record did not establish the amount of the "extensive" damages "caused by the unrestricted flow of water pipes," it limited its opinion "to a determination of entitlement."
 
 
 18
 The government's successful attempt to limit its water damage liability to that resulting from the burst pipes did not constitute a counterclaim. The government did not assert any claim for money against the appellants, but merely endeavored to reduce the damages the appellants were seeking. The government's estimate was directed to the question of what portion of the water damages was caused by the burst pipes. That was an issue relating to damages that the Board did not address in its first decision.
 
 
 19
 B. The appellants challenge the adequacy of the Board's award of damages on two other grounds.
 
 
 20
 The appellants contend that the Board's findings rejecting their claim for damages from the leaky roof are not supported by substantial evidence. Contrary to the appellants' apparent assumption, however, the Board did not reject that claim on the merits. The Board's ground of decision was that because the appellants had not filed that claim against the General Services Administration, the issue was not properly before the Board. That ruling was correct.
 
 
 21
 Appellants also argue that they were entitled to recover the rent they lost after March 1981 because the water damage made the building unusable. The Board correctly rejected this claim because (1) to the extent the appellants sought consequential damages resulting from the government's violation of the lease arrangement, such damages could not "be attributed to acts of the government," and (2) any remaining portion of that claim sounded in tort, a subject over which the Board has no jurisdiction. See 41 U.S.C. Secs. 602, 607(d) (1982).
 
 III
 
 22
 The government contends that the Board had no jurisdiction to consider or make an award for the appellants' claim for water damage from the burst pipes. The government asserts that the appellants' original claim to the contracting officer was not a valid "claim" because the appellants did not place a dollar value upon it. The government urges us to vacate the Board's award of $34,384.75 and remand the case to the Board with directions to dismiss the complaint.
 
 
 23
 The government, however, did not appeal the portion of the Board's decision that was adverse to it, and as appellee it cannot challenge that ruling. Radio Steel & Mfg. Co. v. MTD Prods., Inc., 731 F.2d 840, 844, 221 USPQ 657, 660 (Fed.Cir.), cert. denied, 469 U.S. 831 (1984). In any event, the government apparently never raised that issue before the Board. We therefore decline to consider it.*
 
 
 
 *
 Judge Nies would hold that the asserted jurisdictional defect discussed in part III was cured